[Crim. No. 6176. Second Dist., Div. Three. Dec. 22, 1958.]

THE PEOPLE, Respondent, v. LEROY HAMILTON et al., Defendants; OTHELLO J. STEWART, Appellant.

Bertram H. Ross, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant Stewart and Leroy Hamilton were accused of unlawfully possessing heroin. In a nonjury trial they were convicted. Stewart appeals from the judgment. (There was no motion for a new trial. Probation was denied.)

Appellant contends that the evidence was not sufficient to support the judgment.

■ Officer Abbot testified that on August 30, 1957, about 5 a.m., he and Officer Ward were in a police car at the intersection of Normandie Avenue and Adams Boulevard in Los Angeles; he (witness) saw Leroy Hamilton, in front of a bar, on the southeast corner of that intersection, and at that time Hamilton was "jumping around and jigging like, very similar to a jitterbug, bouncing around"; the officers stopped and asked him what he was doing; he replied that he was just standing around and had nothing to do; the officers asked him for permission to search him; Hamilton turned all his pockets inside out; they searched him, and he did not have any narcotics; then the officers went across the street to a sandwich stand on the southwest corner of the intersection; soon thereafter, he (witness) saw defendant Stewart come from the bar (on the southeast corner of the intersection) and saw him meet Hamilton; then Stewart and Hamilton started east on the sidewalk on the south side of Adams Boulevard; he (witness) watched Hamilton all the time after he first saw Hamilton, and he watched Hamilton and Stewart all the time after Stewart came out of the bar; the street was well lighted; no one else was on the south side of the street from the time Hamilton was first observed until after the arrest; after Hamilton and Stewart had walked about 50 or 60 feet, he (witness) saw Stewart pass a package to Hamilton—they grasped hands; at that time they were about 110 feet east of the place where the officers were standing; then Hamilton put his hand in his right coat pocket; the officers followed them in the police car, and when the car was about 15 feet

back of them, Hamilton whirled to his right side, pulled his hand out of his right coat pocket and dropped a package (Exhibit 1) into the street gutter; the police car was stopped immediately, and Officer Abbot picked up the package and went to Hamilton and stopped him; Officer Ward stopped Stewart who was then about 15 feet farther down the street; the defendants were arrested; Officer Abbot picked up the package within half a minute after it was dropped in the gutter; the officers searched Stewart and found that he had $124, but he did not have any narcotics.

The package which was dropped by Hamilton consisted of an envelope containing an eye dropper, a metal capsule, a hypodermic needle, and five bindles of heroin.

On cross-examination of Officer Abbot by counsel for Stewart, the officer was asked what he had heard about Stewart. The officer replied that he had heard that he was a large dealer in narcotics.

Defendant Stewart testified that he had known Hamilton for about six months—he was casually acquainted with him and knew him by the name of "Pete"; on the morning involved here, he (witness) had gone from Jefferson Avenue to a sandwich place at Normandie and Adams; while he was using the telephone at that place he saw two officers and a man across the street, and he saw that the officers were searching the man; when Stewart had finished telephoning, he walked east across the street and continued east on Adams Boulevard; Hamilton was also walking east on that boulevard, but Stewart was walking about five feet in front of him at all times; while they were walking, Hamilton picked up a little box, and then said that it was "An outfit"; thereafter they continued walking until they had gone about one and one-half blocks; at that time two police officers called Hamilton "to the car"; Hamilton went to the car; an officer called Stewart, and Stewart went to the car; he (Stewart) did not pass any narcotics to Hamilton, and he did not see anyone pick up narcotics from the gutter; he had not had regular employment for approximately three months; he won $105 in a gambling game during the evening preceding the arrest, and that money was part of the $124 which the officers took from him at the time of the arrest; he had been previously convicted of two felonies—burglary and transporting opium.

Hamilton testified that he did not receive anything from Stewart on the morning of the arrest; he (witness) did not throw any narcotics in the gutter, and did not see anyone

pick up narcotics from the gutter; he had seen Stewart previously but never had any association with him.

The trial judge could reasonably find, among other things, from the evidence: that Hamilton did not have any narcotic on his person when the officer searched him in front of the bar (prior to the arrival of Stewart); that Officer Abbot kept Hamilton under observation after he was searched and until and after Stewart met Hamilton in front of the bar, and during the time prior to that meeting Hamilton did not obtain any narcotic from anyone or any place; that Officer Abbot kept Hamilton and Stewart under observation from the time they met in front of the bar until the arrest; that Stewart handed the package containing the heroin and narcotics injection equipment to Hamilton; and that Hamilton dropped the package into the gutter. The questions as to the credibility of the witnesses and the weight of the evidence were questions of fact for the determination of the trial judge. In *People* v. *Belli*, 127 Cal.App. 269 [15 P.2d 809], the defendant was charged with unlawful possession of morphine. In that case officers testified that they saw defendant walk westerly along the side of a street and saw him drop a package on the sidewalk; that at the same time they saw another man approaching the defendant from the opposite direction on the same side of the street and that immediately after defendant dropped the package the other man picked it up; thereafter one of the officers followed the other man, placed him under arrest, searched him, and found a package similar to the one that defendant had dropped on the sidewalk. The package contained morphine. The court said therein at page 271: ''[T]he truth of the matter was for the jury to decide, and it having accepted as true the testimony given by the narcotic agents, and there being nothing inherently improbable in such testimony, this court is bound thereby on appeal.'' In the present case the evidence was sufficient to support the judgment.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.